## Robert M'Meen *against* Evan Owen.

### S. C. 2 Dall. 173.

DEPENDING on the same principles. The latter was an action of covenant brought for non payment of a sum of money due on the sale of a tract of land during the late war. The agreement did not specify in what kind of money the consideration was to be paid, but the bonds taken in pursuance thereof called it lawful money of Pennsylvania. On the one side it was contended, that by the original agreement at and immediately before the drawing of the articles, it was stipulated, that the payments should be made in whatever money was current at the time the several instalments became due; on the other, that it should be regulated by the scale of depreciation of continental money. One Isaac Lewis, who was present at the time of concluding the agreement and drew the article, was, after considerable debate, allowed to give testimony on the part of the plaintiff, explanatory of the contract, as to the kind of money bargained for, and the jury gave a verdict for the plaintiff for the sum in specie.

*The point of evidence was reserved for further discussion; but the judges who tried the cause, cited a number of law cases as the grounds of their decision.  [*136

Mr. Ingersol. No parol evidence can be received to explain, much less to vary, contradict or control a written instrument. The writing must speak for itself, and must be expounded *ex visceribus suis;* otherwise there is no security in any contracts whatever.

Written testimony is to be preferred to unwritten testimony, though Cicero for Archias the poet asserted otherwise. It is the most solemn deliberate act of the mind. Gilb. Law Evid. 5, 6. The parliament of England, by their statute of frauds and perjuries, 29 Car. 2. cap. 3., the legislature of Pennsylvania by their act passed 21st March 1772, and the best writers, recognize the doctrine. The statute of 29 Car. 2. was enacted to prevent the evil consequences to be apprehended from parol evidence, Blackst. Com. 157, and it is stiled "a great and necessary security to private property." 4 Blackst. Com. 439.

I YEATES—9

[M'Meen v. Owen.]

The maxim of law is, "*ambiguitas verborum latens verifi-catione suppletur, nam quod ex facto oritur ambiguum verifi-catione facti tollitur.* Bacon's Elem. p. 99, reg. 23. 4th ed. of his works, vol. 2, p. 371, reg. 25.

Lord Bacon in his comments on the maxim, lays down this rule of distinction. The *patens ambiguitas*, or that which appears to be ambiguous on the face of the deed or instrument, can be supplied by no proof, nor holpen by any averment; but the *latens ambiguitas* or that which arises from some collateral proof out of the deed, and the deed itself seemeth certain, may be supplied by parol proof. Ibid. Analogous hereto are the reasons assigned by Powell, in his introduction to his treatise on Powers, p. 14, 15, 16, for allowing unwritten evidence explanatory of deeds; and he says, parol evidence must not be recurred to, in order to explain the effect of the words of a deed or will, but to ascertain a fact *dehors* the deed or will, essential to be known, in order truly to construe it. No parol agreement, varying the condition of a bond shall be admitted as a plea. 1 Espinasse 247. No agreement by parol can dispense with an obligation. Ib. 248. The intent of a deed must be collected from its words. 2 Atky. 575. A will is not to be affected by matter *dehors*. 8 Co. 155. No parol evidence is to be received to explain a blank in a will. 2 Atky. 239. Writings must speak for themselves; nothing is to be added to the words of a deed. Ib. 383. Declarations at the time of the transaction, of the testatrix's intentions as to her will, refused.

*137] The exceptions to *the general rule are, where evidence is offered to explain a person or thing, or to rebut an equity. Ib. 373. Parol evidence admitted to shew the intention of the father, in making a conveyance to his younger son, because it concurs with the conveyance, and is only to rebut a pretended resulting trust. 1 Wms. 111. Deeds cannot be construed against their own expressions. 5 Bac. Abr. 362. Instructions of a testator for drawing his will, and depositions respecting his declaration, refused to be read. 2 Vern. 98. Parol evidence not admitted to contradict a deed, it not being charged to have been omitted by fraud. 1 Brown's Cha. Rep. 93. Parol evidence never received, unless where a clause has been excluded by fraud or mistake. Powel on Contracts 432. Parol evidence not to be admitted to control what appears on the face of the deed or will. 2 Bac. Abr. 309. No parol evidence shall be given to extend or abate a bond. Cowp. 47. A written instrument is conclusive evidence of a contract, so far as to entitle a party to issue execution, under the act of assembly passed 27th December 1784. Dall. 83.

As to the cases cited by the court, in the decision of M'Meen v. Owen, Mr. Ingersol contended, that the authorities went no farther, than to shew, that in some instances, parol evi-

[M'Meen *v*. Owen.]

dence had been received in order to rebut an equity, to ascertain a person or thing, or where some essential matter had been left out of the written instrument by fraud, or at least by mistake; and he gave the following answers to the cases. Rosewell *v*. Bennet.   3 Atky. 77.   Parol evidence of testator's declarations as to a son, after making his will, were received to shew his intentions, that an advancement made for him should be an ademption of his legacy.   Resp.   These declarations could not be expressed in his will, being made after the execution thereof.   Joynes *v*. Statham.   3 Atky. 388.   On a bill for a specific performance of an agreement, if there has been any omission in it, defendant ought to have the benefit of parol evidence to prove it, by way of objection to the specific performance.   Resp.   The case of Preston *v*. Merceau executor (2 Black. Rep. 1249,) which decided that parol evidence should not be allowed to vary a written agreement, contains the proper strictures on it; it was an executory act, there were strong suggestions of fraud, the defendant could not read or write, and the agreement was drawn by the plaintiff himself.

Goodinge *v*. Goodinge.   1 Vez. 231.   Parol evidence allowed to ascertain a person or thing, or that general words were used in a particular sense, but not to prove the instructions of a testator after his will was written.

*Resp.   The chancellor reserved the weight of the [*138 evidence to be judged of by himself, and it appearing to impugn the words of the will, he said it signified nothing.

Door *v*. Geary.   1 Vez. 255.   Parol evidence was admitted, to shew the intentions of the testator in his will.

Resp.   The description in the bequest was erroneous.

Mascal *v*. Mascal.   1 Vez. 323.   If a question arises on a will, evidences of testator's declarations is not to be received; but parol evidence was admitted to prove that a settlement was made in satisfaction of a legacy.

Resp.   Here the adverse party examined the same witness.

Baker *v*. Pain.   1 Vez. 457.   How can a mistake in an agreement be proved but by parol evidence? per Lord Chancellor.

Resp.   In this case, the rough minutes and calculations corrected the mistake in the agreement.

Pitcairne *v*. Ogbourne.   2 Vez. 375.   Parol evidence was admitted to shew, that though a bond on marriage was for 150l. per annum, yet the real agreement was for 100l. per annum; and thus to vary, and even contradict the writing.

Resp.   Here the grounds were fraud, it being a private agreement, to deceive a material party.

Harvey *v*. Harvey.   2 Cha. Cas. 180.   Parol agreement established by the testimony of Sir John Coel alone, against the trust expressed in a deed indented and made in consideration of marriage; though the lady had brought her husband

[M'Meen *v.* Owen.]

a portion of 30,000l. in personal property, and was seized of lands of the yearly value of 1200l. and more.

Resp.   The observation of Lord Chief Baron Reynolds, in the case of Fitzgerald and executors *v.* Lord Fauconberge *et al.* Gilb. 213, 214, is the only answer that can be given, viz. that it appeared plainly to be the design of the deed to screen the estate from sequestration, during the troubles.

The court, without hearing the counsel in support of the parol testimony, who were about to speak, resolved that the evidence was properly received in both causes.

M'Kean C. J.   The general rule of law certainly is, that a deed, will, or other written instrument, must be expounded by its own words.   But there are exceptions to this rule in the books, as where parol evidence is brought to ascertain a person or thing, or to rebut an equity, or where a matter has been omitted to be inserted in the writing, either by fraud or through mistake.   We will not venture to enumerate all the cases, *wherein to do essential and substantial justice, \*139] the court may find themselves constrained to receive such unwritten testimony.   In the case of Hurst's lessee *v.* Kirkbride and Riché, tried at the Court of *Nisi Prius* for Bucks county, parol evidence was admitted to shew, that it was not the intention of major Fell to include Pennsbury manor in a deed for all his lands in Pennsylvania, from what passed before and at the time of executing the articles of agreement.   This determination was founded on the case of Harvey *v.* Harvey, cited on the argument.   Though it goes much further than the cases before us, it has been generally approved of.   In many other cases since the declaration of independence, parol evidence has been received to explain, and in some sort to vary, what appeared on the face of the writings.   Such was the resolution in Cochran's executors *v.* Cochran's executors, tried at York *Nisi Prius*, May 1789, and heretofore cited in this cause, and many others, which I will not now recapitulate.

In Field et al. *v.* Biddle, it was equivocal in some degree on the mere words of the indenture, what was the real intention of the parties as to the bond, in case Oxley and Hancock should not send in their ratification of the agreement within six months.   The writing did not go so far as to enumerate that case.   Indeed, it could scarcely be presumed, that Mr. Biddle would have given his bond for 1000l. sterling, unless on the condition, that Mr. Collins, his son-in-law, should be discharged from the remainder of Oxley and Hancock's demand.   But why should we leave a matter to presumption or conjecture, when the true intention and meaning of the contracting parties can be ascertained with absolute precision, by unwritten evidence, not within the mischiefs which the general rule intended to obviate, namely, pre-

[M'Meen *v.* Owen.]

varication and misrepresentation? Besides, it appears to us, that the nominal plaintiffs were acting as attornies in fact to Oxley and Hancock, under qualified powers, and that they either could not, or would not give discharges, according to the agreement, without being authorized thereto by their constitutents. What good reason can be assigned, why we should not receive oral testimony, to prove that this bond was delivered as an escrow to Field, and lodged with him, to take effect only on Oxley's and Hancock's transmitting their ratification of the composition within the stipulated period?

As to M'Meen *v.* Owen, there was an ambiguity apparent on the face of the covenant. The kind of money is not therein described, which was agreed to be paid. Various species of money were then in circulation, and if parol evidence is not to be resorted to, in order to discover the real intentions of the *contracting parties, justice must necessarily be administered at random. [*140

Shippen and Yeates Justices, concurred.

Bradford J. I conceive myself bound by the determination in Hurst's lessee *v.* Kirkbride and Riché, and now look on it as the settled law of Pennsylvania. That resolution goes further than the case of Harvey *v.* Harvey, and I confess, the principles on which it was decided, are not altogether satisfactory to my mind. That case alone has, however, determined my opinion, and I concur with the rest of the court.

Judgment *pro def.* in Field et al. *v.* Biddle.

Judgment *pro quer.* in M'Meen *v.* Owen.

Cited in 10 S. & R., 291, 342; 6 Wh., 305.